823 So.2d 998 (2002)
Adam J. CEASAR, Sr., Individually and on behalf of his minor son, Adam J. Ceasar
v.
Dr. Richard J. BARRY and Lake Charles Memorial Hospital.
No. 02-52.
Court of Appeal of Louisiana, Third Circuit.
July 17, 2002.
Rehearing Denied September 11, 2002.
*999 Robert W. Stratton, Baton Rouge, LA, for Plaintiffs/Appellees, Adam J. Ceasar, Sr. Individually and on behalf of his minor son, Adam Ceasar, Jr. and Elvia Ceasar.
Milo A. Nickel, Jr., Lake Charles, LA, for the Defendant/Appellant Louisiana Patients' Compensation Fund.
Court composed of NED E. DOUCET, JR., Chief Judge, HENRY L. YELVERTON, JOHN D. SAUNDERS, OSWALD A. DECUIR, and MICHAEL G. SULLIVAN, Judges.
DOUCET, Chief Judge.
The Patient's Compensation Fund (PCF) appeals the trial court's judgment granting the Plaintiffs' motion for summary judgment and rendering judgment in favor of the Plaintiff.
The underlying facts of this case are not in dispute. They were outlined by this court in a previous appeal in this same case, Ceasar v. Barry, 99-01733, fn. 1 (La. App. 3 Cir. 11/02/00); 772 So.2d 331, as follows:
Elvia Ceasar sought prenatal care from Dr. [Richard] Barry in 1986. She was both diabetic and obese; the Ceasars contend that Dr. Barry did not treat these conditions, nor did he foresee the complications they would cause in the development and birth of the baby. Dr. Barry was the attending physician when Elvia went into labor on May 15, 1987. The delivery was difficult and complicated, requiring the use of forceps. The baby weighed eleven pounds at birth and had unusually large shoulders; he was diagnosed with dystocia and Erb-Klumpke Palsy, allegedly the results of the traumatic delivery. The plaintiffs also suggest that the child's recently diagnosed learning disability may be the result of birth trauma also.
The court in that case also outlined the procedural history of the case to the point of that appeal:
Adam and Elvia Ceasar filed suit against Dr. Richard Barry, his insurer, Physicians National Risk Retention Group (PNRRG), and Lake Charles Memorial Hospital for alleged malpractice in the prenatal care provided to Elvia and in the delivery and birth of their minor son, Adam Ceasar, Jr. During the course of the litigation, the plaintiffs and PNRRG, which is in receivership, entered into a settlement agreement for $100,000; the agreement was approved by the bankruptcy court. The district court also approved the settlement and found that pursuant to La.R.S. 40:1299.44, liability was admitted and established, thereby precluding the Louisiana Patients' Compensation Fund from contesting that issue in a subsequent proceeding for damages in excess of $100,000. The Fund appeal[ed] that judgment, arguing that because of the insurer's bankruptcy, the plaintiffs [were] unlikely to receive the full amount of the settlement, and the provisions *1000 of La.R.S. 40:1299.44 [were], therefore, not met.
Id. at p. 1; 332.
This court held that the continuing settlement obligation of bankrupt insurer to pay $100,000, rather than the actual payment of $100,000, was sufficient to trigger the statutory admission of liability.
Proceeding again at the trial level, the Plaintiffs filed a Motion for Summary Judgment alleging that there remained no material issue of fact and that the Plaintiffs were entitled to judgment on the issue of the quantum of damages sustained. The trial court granted the motion and rendered judgment in favor of the plaintiffs in the amount of $500,000.00 less a credit of $100,000.00 and for future medical care for Adam Ceasar, Jr. as it accrues. The Defendant, PCF, appeals the judgment. The PCF asserts the following assignments of error:
1. The trial court erred in implicitly ruling that the statutory admission of liability included an admission that Dr. Barry was 100 percent responsible for the damages incurred by the plaintiffs.
2. The trial court erred in granting the plaintiffs' Motion for Summary Judgment where there exist genuine issues of material fact regarding causation of damages in excess of $100,000.00
3. In the alternative, the trial court erred in finding that Adam J. Ceasar, Jr. was in need of future medical care based on insufficient evidence.
4. Further, in the alternative, the damages awarded by the trial court were excessive.
The Plaintiffs have answered the appeal asking for interest of the full amount of the $500,000.00 damage award.
Finding merit in the PCF's first assignment of error, we need not consider the additional and alternative assignments of error. Further, this ruling renders moot the answer to the appeal.

SUMMARY JUDGMENT
Summary judgments are reviewed on appeal de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226. The guidelines for obtaining summary judgment are stated in Louisiana Code Civil Procedure Articles 966 and 967. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Article 966(B). Among the guidelines of the article is that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends." Article 966(A)(2). The burden of proof remains with the movant. Article 966(C)(2). When a motion for summary judgment is made and supported as provided, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided, must set forth specific facts showing that there is a genuine issue for trial. Article 967. If he does not respond, summary judgment, if appropriate, shall be rendered against him. Article 967.
In a medical malpractice action, the plaintiff has the burden of proving, by a preponderance of the evidence, (1) that the doctor's treatment fell below the standard of care expected of a physician in his medical speciality, and (2) the *1001 existence of a causal relationship between the alleged negligent treatment and the injury sustained. Fusilier v. Dauterive, 2000-151 (La.7/14/00), 764 So.2d 74. Louisiana Revised Statute 40:1299.44(C)(5) states that in approving a settlement, the court shall consider the liability of the health care provider as admitted and established when $100,000 has been paid. In a medical malpractice case, summary judgment is an appropriate vehicle both as to findings of liability and damages. Bijou v. Alton Ochsner Medical Found., 95-3074 (La.9/5/96), 679 So.2d 893; Bramlet v. The Louisiana Patient's Compensation Fund, 98-1728 (La.11/6/98), 722 So.2d 984. Where a medical malpractice victim is clearly entitled to the statutory limit of $500,000, a summary judgment will eliminate the need for unnecessary litigation and promote judicial economy. Bijou, 679 So.2d 893.
Perkins v. Coastal Emergency Medical Services, 00-10, pp. 1-3 (La.App. 3 Cir. 2/7/01); 779 So.2d 1065, 1066-779.

LIABILITY/COMPARATIVE FAULT
The PCF first alleges that the trial court erred in ruling that the statutory admission of liability included an admission that Dr. Barry was solely liable for the damage incurred by the Plaintiffs. The PCF argued in opposition to the Plaintiffs' motion for summary judgment and argues again on appeal that because the Plaintiffs are still pursuing their claims against Lake Charles Memorial Hospital, a co-Defendant, the hospital could be found comparatively at fault for the injury to Adam Ceasar, Jr, and that the PCF would thereby be entitled to a pro rata reduction in the damages it could be required to pay. After reviewing the jurisprudence in this regard, we find that the PCF is correct in asserting that it is entitled to assert the comparative fault of the hospital. This court in Griggs v. Riverland Medical Center, 98-256, p. 9 (La.App. 3 Cir. 10/14/98); 722 So.2d 15, 21, writ denied, 99-0385 (La.5/28/99); 735 So.2d 622, explained that summary judgment "may not be granted on a particular element of liability when the judgment is not completely dispositive of the issue of liability between the parties and other issues such as comparative fault remain unresolved." In that case this court further found that the trial court had erred in refusing to allow the PCF to present evidence of comparative fault of a third party in order to "gain a proportionate reduction in damages.... In other words, the trial should have been conducted on the issues of comparative fault and damages in compliance with the supreme court's ruling in Steptoe [v. Lallie Kemp Hospital, 93-1359 (La.3/21/94); 634 So.2d 331]. The trial court's failure to do so is erroneous." See also Williams v. City of New Orleans, 93-2043 (La.App. 4 Cir. 1994); 637 So.2d 1130, 1132. Additionally, the Louisiana Supreme Court in Conner v. Stelly, 02-280 (La.1/30/02); 807 So.2d 827, recently remanded a case to the trial court for further proceedings after finding that "the portion of the trial court's judgment prohibiting the PCF from arguing or presenting evidence before the jury that victim or third party fault caused any of the damages in this case is reversed." Accordingly, we find that, as a matter of law, the Plaintiffs were not entitled to summary judgment against the PCF based on the sole liability of Dr. Barry. As this ruling affects the damage award, that portion of the summary judgment is also overturned. We find that this case must be remanded to the trial court for proceedings to determine the degree of comparative fault attributable to the various parties Defendant as well as for a precise determination of the quantum of damages.

*1002 CONCLUSION
For these reasons, the judgment of the trial court granting summary judgment in favor of the Plaintiffs is reversed. This matter is remanded to the trial court for further proceedings as outlined in this opinion. Costs of this appeal are assessed to the Plaintiffs.
REVERSED AND REMANDED.
SAUNDERS, J., DISSENTS AND ASSIGNS WRITTEN REASONS.
SAUNDERS, Judge, dissenting.
Recently, in Francois v. Thibodeaux, 02-1588, P. (La.6/12/02); 821 So.2d 479, the Louisiana Supreme Court reiterated that "[w]here the requirements of law are so straightforward, it is improper to resort to equity." In the present case, La.R.S. 40:1299.44(C)(5) clearly and unequivocally states that "payment ... establishes ... liability." Accordingly, under the clear and express statutory language and under Supreme Court jurisprudence, liability is established, and Ceasar is entitled to summary judgment
Moreover, unlike Francois, both equity and legislative intent favor the Plaintiff's position in the present case. La.R.S. 40:1299 is sui generisof its own kind the only one of its kind. This legislation implements the only valid "cap" on damages recognized in Louisiana law. A similar cap on damages in favor of the State has been held unconstitutional and the legislature has not deemed it necessary to give similar favored treatment to any other segment of society. The "cap" was instituted to foster a viable health care industry to care for the citizens of Louisiana. The class of persons who claim damages received little "tradeoff" in this legislative scheme, but they were an element of procedural consideration in the trigger mechanism contained in La.R.S. 40:1299.44(C)(5). This trigger mechanism is a real benefit in that it simplifies the plaintiff's case procedurally. Does it cause the defendant some procedural inconvenience perhaps sobut this inconvenience is small in comparison to the benefits given to the defendants by the "cap". Thereforeif we are inclined to question the wisdom of the legislature in allowing this trigger mechanism, we must balance the inconvenience to the defendant against the benefit of the "cap" andwhen this is doneit makes the legislative mandate under review quiet palatable.
In any event, it seems clear that the letter of the law, legislative intent, and the dictates of equity all require an affirmation of the trial court. Accordingly, I respectfully dissent.